IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| BENNY ODEM, JR., | § | |
| Institutional ID No. 1703386, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:20-CV-00041-BU |
| | § | |
| PAIGE RUTLEDGE, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff BENNY ODEM, JR., an inmate currently incarcerated in the Texas Department of Criminal Justice (TDCJ) Michael Unit and proceeding pro se, filed this civil action on February 25, 2020, seeking to have criminal complaints filed against the Defendants. Dkt. No. 1 at 15.[1] Now, through his Amended Complaint, Supplement to his Amended Complaint, and Questionnaire responses, Odem alleges that the Defendants are engaged in a retaliatory conspiracy against him, stemming from his grievances and lawsuit that he initiated for their failure to forward or deliver a package from an outside vendor. *See* Dkt. Nos. 13, 20-1, 37. Odem asserts various constitutional and state tort law claims against numerous defendants that the Court construes as a 28 U.S.C. § 1983 complaint. *See id.*

---

[1] In Odem's original Complaint, he does not raise any federal or constitutional issues, but seeks to "forward the complaint to the proper authority for criminal complaints if not [in the Court's authority] to file charges." Dkt. No. 1 at 15.

Odem has paid the full filing fee, but because he is an inmate who sues a government entity, officer, or employee, his claims remain subject to preliminary screening under 28 U.S.C. § 1915A, and his case was transferred to the undersigned to conduct the screening required by the statute on October 22, 2020. Dkt. No. 18.

Odem has not consented to a magistrate judge exercising the full jurisdiction of this Court, thus the undersigned submits these Findings, Conclusions, and Recommendations for the disposition of Odem's claims. For the reasons explained below, the undersigned finds that Odem's First Amendment claim against Major Karla Sadler for nominal and punitive damages survives preliminary screening and recommends that all other claims against the Defendants be dismissed with prejudice for frivolousness and failure to state a claim.

## I. PRELIMINARY SCREENING

A court must dismiss a complaint filed by a prisoner against a government entity or employee if the court determines the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*).

A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint lacks an arguable basis in fact if it rests upon clearly baseless factual contentions, and similarly lacks an arguable

basis in law if it contains indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

Dismissal for failure to state a claim—whether under Section 1915(e)(2)(B)(ii), Section 1915A(b)(1), or Rule 12(b)(6)—"turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam). Thus, if a plaintiff "plead[s] facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief, the claims should not be dismissed merely because the plaintiff fails to articulate the proper legal theory that otherwise makes those facts actionable in court. *Johnson*, 574 U.S. at 11–12 (citing FED. R. CIV. P. 8(a)(2)–(3), (d)(1), (e)).

Courts accept *well-pleaded* factual allegations as true. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (emphasis added). This means the factual allegations, while not required to be detailed, must amount to more than mere labels, conclusions, or a statement of the legal elements of a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Chhim*, 836 F.3d at 469.

For claims to be substantively plausible, a plaintiff need not establish that the pleaded facts probably occurred as alleged, but the facts must allow the court "to infer more than the mere possibility of misconduct." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678–79). Even pro se plaintiffs

must plead facts that raise the right to relief above a speculative level. *Chhim*, 836 F.3d at 469 (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)). And when plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When evaluating a complaint under these standards, courts liberally construe the pleadings of pro se plaintiffs, holding their complaints to "less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). But "liberal construction does not require that the Court ... create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013). "To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff'" and would "'transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

Ultimately, "'[d]etermining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 679).

## II. FACTUAL BACKGROUND

Odem's claims arise from a series of transactions that begin with Odem alleging that he was deprived of property—a package from an Islamic Bookstore—when it was not

delivered to him. *See* Dkt. Nos. 13, 20-1, 37. Then, arising from his use of the courts and grievance system to grieve about not receiving the package, Odem states that Unit staff began to commit acts of retaliation against him. *See id.* And ultimately, Odem claims that these adverse actions by individual staff members grew into an overarching conspiracy against him by the Defendants that resulted in numerous constitutional violations. *See id.*

Against 23 different Defendants employed by TDCJ, Odem alleges various claims of: (1) deprivation of private property and religious artifacts; (2) denial of due process; (3) denial of equal protection; (4) denial of access to the courts; (5) retaliation; (6) illegal search and seizure; (7) cruel and unusual punishment; (8) excessive use of force; (9) deprivation of liberty; (10) wrongful confinement; (11) discrimination; (12) conspiracy; (13) state tort claims; and (14) violations of state criminal law. *See id.* Several of these claims lack any factual or legal bases, consisting only of Odem's conclusions, which the undersigned addresses last below.

Odem in his Amendment Complaint asks the court for "punitive damages, compensation for all los[t] property, expunge[d] disciplinary convictions … [and] declaratory judgment in the plaintiff's favo[r]." Dkt. No. 13 at 6. In his Supplement to his Amendment Complaint, Odem requests an injunction ordering the TDCJ to "amend the offender disciplinary process" and to award "compensatory damages jointly and severally against" the Defendants. Dkt. No. 20-1 at 16.

### III.  DISCUSSION AND ANALYSIS

Odem's extensive claims hinge on his conclusion that the Defendants employed at the Middleton and Robertson Units improperly failed to deliver to him a package

containing religious materials. *See* Dkt. Nos. 13, 20-1, 37. Odem's various other claims, allegedly occurring as a result of his use of the grievance system and courts, all arise from Odem not receiving his package. *See id.* Most of Odem's claimed violations fail to provide sufficient facts to support a claim for relief. Instead, Odem consistently pleads both factual and legal *conclusions* to support his claims. However, to the extent that Odem alleges facts of personal involvement and misconduct in conjunction with his conclusions, the undersigned has evaluated those facts to determine if they state a claim and are non-frivolous.

A. Deprivation of property claims

Odem states that on March 27, 2019, he made a purchase from an outside vendor, referred to as the Islamic Bookstore (Bookstore). Dkt. No. 13 at 6. Odem requested that the vendor ship the package to Abdullah Muhammad-Bey at the TDCJ Middleton Unit, the TDCJ regional director for the Islamic religion. *Id*. Odem alleges that Paige Rutledge, the Middleton Unit Mail Room Supervisor, received the package "between the 25th & 30th of April 2019 as understood by tracking numbers (UPS.)". *Id.* Odem then claims that Rutledge failed to forward the package to him by not following proper mailroom procedures. *Id.* Additionally, Odem states that Philip Carlton, the Head Chaplain of the Middleton Unit, failed to forward his package when Mr. Muhammad-Bey was on leave and, ultimately, later relinquished his position. *Id.* at 7.

Odem also claims that Jarvis Johnson, the Robertson Unit Mailroom Supervisor, failed to deliver to him the package from the Bookstore forwarded from the Middleton

Unit.[2] *Id.* In addition, Odem claims that Stanley Baldwin, the Robertson Unit Head Chaplain, failed to deliver to him the forwarded package from the Middleton Unit. *Id.* Odem alleges that the actions of Defendants Rutledge, Carlton, Johnson, and Baldwin amounted to a "taking of private property," "den[ail] of due process," and "deprivation of religious artifacts." *Id.* at 3.

In a separate incident, on January 22, 2020, Odem states that he approached wardens J. Lopez and Leeroy Cano and informed them of his missing package from the Bookstore as well as his related grievances and civil suit against Sadler. Dkt. No. 37 at 5; Dkt. No. 13 at 9–10. Odem alleges that Sadler then waited for Odem to get out of the wardens' sight and seized his prayer (Dhikr) beads. *Id.* Odem claims that Sadler said while taking the beads, "Since you want to run your big mouth [to warden Lopez, Cano, and Thompson] about your precious Muslim crap you can hand those beads over or I'll lock your black ass up."[3] Dkt. No. 37 at 5.

Odem also alleges that Sadler intentionally misclassified the prayer beads as a "necklace" on a confiscation slip to permanently deprive him of his religious artifact in retaliation for his complaints to the wardens. *Id.* at 4–5; Dkt. No. 13 at 9. Odem states that he objected to Sadler's classification of the property, informed her that the beads were religious, and asked her to correct the confiscation slip. Dkt. No. 37 at 6; Dkt. No. 13 at 9.

---

[2] The Court notes that Odem alleges inconsistent factual theories that: (1) the Middleton Unit mailroom staff and chaplain failed to forward his package to the Robertson Unit and (2) the Robertson Unit mailroom staff and chaplain failed to deliver the package forwarded by the Middleton unit. *See* Dkt. No. 13 at 6–7.

[3] Odem's allegations of Sadler's abusive and discriminatory language also fail to state a claim. The "mere threatening language and gestures of a custodial office[r] do not, even if true, amount to constitutional violations." *Robertson v. Plano City of Texas*, 70 F.3d 21, 24 (5th Cir. 1995). Likewise, "[i]t is clear that verbal abuse by a prison guard does not give rise to a cause of action under § 1983." *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997).

Odem then claims that Sadler became angrier and physically snatched the slip away from him. Dkt. No. 37 at 6; Dkt. No. 13 at 10.

Whether intentional or negligent, the "deprivation of property by a state employee" is not a constitutional violation "if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 531, 533 (1984); *see also Parratt v. Taylor*, 451 U.S. 527, 541–44 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). The Fifth Circuit has held that the availability of the tort of conversion is an adequate post-deprivation remedy for prisoners who attempt to make constitutional claims based on the loss of their property. *Murphy v. Collins*, 26 F.3d 541, 543–44 (5th Cir. 1994).

Under Texas law, a plaintiff may sue for the state-law tort of conversion as a remedy for his property loss. *See id.* State tort suits only fail to provide a meaningful remedy when "a deprivation of property is caused by conduct pursuant to establish state procedure, rather than random and unauthorized action." *Schwarzer v. Wainwright*, 810 F. App'x 358, 359 (5th Cir. 2020) (quoting *Hudson*, 468 U.S. at 532).

Odem does not allege that the Defendants seized his package from the Bookstore under established state procedure. In fact, Odem alleges that the Defendants failed to follow established mailroom procedure. *See* Dkt. No. 13 at 7. And the uncontradicted records indicate that the Robertson Unit allows inmates to carry prayer beads, but Sadler allegedly ignored the policies and seized them as contraband, despite being "fully aware of the error." *Id.* at 9. Thus, state law provides an adequate remedy for the alleged "random an unauthorized" conduct by the Defendants. *See Schwarzer*, 810 F. App'x at 359.

Because Texas provides an adequate post-deprivation remedy for the loss of Odem's package and prayer beads, such a loss fails to state a constitutional violation. *See Murphy*, 26 F.3d at 543–44. But Odem is not without remedy because "[i]n Texas, when an inmate's property is taken without compensation, his remedy is in state court, not federal court." *Stauffer v. Gearhart*, 741 F.3d 574, 583 (5th Cir. 2014) (citing *Thompson v. Steele*, 709 F.2d 381, 383 (5th Cir. 1983)).

For these reasons, the undersigned RECOMMENDS that Odem's property deprivation claims against the Defendants be DISMISSED with prejudice for frivolousness and failure to state a claim upon which relief may be granted. § 1915A(b).

## B.  Religion Claims

Odem alleges four separate incidents of the Defendants burdening his religious exercise, and asks for compensatory and punitive damages, and declaratory judgment. *See* Dkt. Nos. 13, 20-1, 37. Both the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA) protect prisoners from government action that substantially burdens the free exercise of their religion, but to varying degrees. *See Holt v. Hobbs*, 574 U.S. 352, 356–57 (2015).

The First Amendment requires that prisoners have reasonable opportunities "to exercise the religious freedom guaranteed by the First and Fourteenth Amendment without fear of penalty." *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972). Thus, any prison regulations that burden religion must be "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). However, a prisoner may state a viable First Amendment violation when they allege a Unit staff member did not act under a policy or

regulation, since such actions are not reasonably related to legitimate penological purposes. *See Witherspoon v. Waybourn*, 2021 WL 2635917, Civil Action No. 4:20-cv-1150-P, at * 6 (N.D. Tex. June 25, 2021) (analyzing a chaplain's alleged denial of religious diet); *see also Shakur v. Selsky*, 391 F.3d 106, 110, 120 (2nd Cir. 2004) (holding that a guard's intentional act that deprived a prisoner from attending a religious feast stated a viable First Amendment claim).

In comparison, Congress enacted RLUIPA to provide greater protections than the rights provided under the First Amendment. *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005). RLUIPA mandates that:

> "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."

42 U.S.C. § 2000cc–1(a).

To benefit from the protections of RLUIPA, a plaintiff must first show that: (1) their religious exercise is grounded in a sincerely held religious belief and (2) that the government's action substantially burdens that exercise. *Ali v. Stephens*, 822 F.3d 776, 782–83 (citing *Holt*, 574 U.S. at 360–61). RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A). The government imposes a substantial burden when "it truly pressures the adherent to significantly modify his religious behavior and

significantly violates his religious beliefs." *Adkins v. Kasper*, 393 F.3d 559, 570 (5th. Cir. 2004).

Construing Odem's Complaint liberally, he claims that the Defendants' burdened his religious practice by (1) failing to deliver his package from the Bookstore, (2) denying him a religious diet, (3) denying him religious services and gatherings, and (4) Sadler's seizing his prayer beads. *See* Dkt. Nos 13, 20-1, 37. However, Odem's religious freedom claim against Sadler is the only claim with sufficient factual support to warrant analysis.

### 1. Claims deficient in factual support against the Defendants

Odem's claims relating to his package from the bookstore, religious diet, and denial of religious services are not supported with sufficient facts to state a claim. The Court is not required to accept Odem's use of both factual and legal conclusions when evaluating his complaint. *See Chhim*, 836 F.3d at 469.

Odem fails to provide facts that the Defendant's alleged failure to deliver his package from the Bookstore amounted to a "direct attack upon [his] religious practice". *See* Dkt. No. 17. Odem does not allege any facts, other than the possibility of negligence in the handling of his package, to support his claim that the Defendants acted with the intent of burdening his religious practice. *See id.* Odem simply concludes that because his package was not delivered, there must have been an intent on the parts of all those potentially involved in the handling of that package to burden his religious practice. While such a conclusion is theoretically possible, it falls short of being plausible.

Additionally, Odem states that Warden Thompson violated his religious rights by "affirming [] the seizure of [his] religious artifacts" in reference to Sadler's alleged seizure

of his prayer beads. Dkt. No. 13 at 17. What Odem does not allege is any facts of personal involvement by Warden Thompson. *See id.* "Officials acting in a supervisory role may only be held liable under § 1983 if they either (1) affirmatively participate in acts that cause a constitutional deprivation or (2) implement unconstitutional policies that causally result in the plaintiff's injury." *Thompson v. Johnson*, 348 F. App'x 919, 921 (5th Cir. 2009) (citing *Mouille v. Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992)). Odem fails to state a supervisory liability claim against Thompson since he does not provide any facts of his personal involvement.

Odem also alleges that the Defendants force him to choose between eating "in violation of [his] religious no pork diet or not eat[ing] at all." Dkt. No. 37 at 21. He claims that the Defendants "lie and ensure its [b]eef which has come to be [p]ork each time." *Id.* However, Odem does not provide facts demonstrating how he knows that he has been served pork, who has served him pork, or when these allegations have occurred. And while it is conceivable that Odem was provided meals that were not in accordance with his religious beliefs, the Court is unable to infer that it was plausible from the facts alleged by Odem. Although this allegation is troubling, it is conclusory, and Odem has not provided sufficient facts that would allow the Court to infer the plausibility of his claim.

Similarly, Odem's claim that he "has been excluded from [f]rom [r]eligious [s]ervices and [g]atherings" is equally devoid of factual support. *See id.* at 22. Odem has not provided a name for any Defendant, specified the religious activity denied, or provided a date for the alleged violation. Like the claims above, Odem's factual conclusions are insufficient to state a claim.

For these reasons, the undersigned RECOMMENDS that all claims asserting that the Defendants violated Odem's religious rights under the First Amendment or RLUIPA regarding his Bookstore package, religious diet, religious gatherings, and supervisory claims against Warden Thompson be DISMISSED with prejudice for frivolousness and failure to state a claim upon which relief may be granted. § 1915A(b).

  *2. Claims Against Sadler*

Odem claims that Sadler intentionally "depriv[ed] plaintiff of his religious exercise" when she seized his prayer beads. *Id.* at 17. Sadler supposedly confiscated Odem's beads after Odem orally complained to the wardens about his missing package. Dkt. No. 37 at 5. Sadler than waited for Odem to get out of sight of the wardens, and approached Odem and said, "Since you want to run your big mouth [to the wardens] about your precious Muslim crap you can hand those beads over or I'll lock your black ass up." *Id.* Odem states that he objected to Sadler's classification of the property, informed her that the beads were religious, and asked her to correct the confiscation slip, but she refused. *Id.* at 6.

The undersigned now addresses Odem's claim for "punitive damages, compensation for all los[t] property" and "declaratory judgment" against Sadler. *See* Dkt. No. 13 at 6–9.

  *i. Odem's First Amendment claims made against Sadler in her personal capacity survive preliminary screening*

Accepting Odem's well-pleaded facts as true, as the Court must at this stage, the undersigned finds that Odem's First Amendment claim against Sadler for her unauthorized and intentional seizure of his prayer beads states a claim that survives judicial screening.

Sadler will be ORDERED to file an answer, motion, or other responsive pleading to the Complaint. The Court expresses no opinion as to the lawfulness of the Defendant's actions by requiring an answer, and nothing in this order constitutes an adverse finding to his conduct.

## ii.  *Declaratory relief against Sadler for a single incident*

Odem asks the Court to "issue declaratory judgment in [his] favo[r]". Dkt. No. 13 at 6. The uncontradicted prison records indicate that prisoners are allowed to wear beads, if they are worn under the prisoner's uniform. The conclusion that the wearing of beads is generally permitted is supported by the allegation that Sadler seized Odem's beads as soon as they were "out of sight of the wardens," presumptively so she would not be caught violating the policy. Dkt. No. 37 at 5.

The Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, is "an enabling act, which confers discretion on the courts rather than an absolute right on the litigant." *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). Furthermore, the Act provides no independent basis for jurisdiction. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 197 (2014); *Skelly Oil Co. v. Phillips Petro. Co.*, 339 U.S. 667, 671–72 (1950). Unless Odem has a valid claim on another basis, he has no basis for the Court to issue any declaratory judgment. *See Schilling v. Rogers*, 363 U.S. 666, 677 (1960).

Regarding Odem's claims that are dismissed above, the lack of an underlying substantive claim against Defendants effectively resolves any dispute as to Odem's request for declaratory judgment against those parties. Declaratory relief is unavailable in the

absence of some "judicially remediable right." *Schilling*, 363 U.S. at 677. Without a plausible claim, Odem has no basis to obtain a declaratory judgment.

Regarding Odem's First Amendment claim against Sadler that survives, claims for declaratory relief require a showing of future imminent harm because such claims "seek[] to define the legal rights and obligations of the parties in anticipation of some future conduct, not to proclaim liability for a past act." *Haggard v. Bank of the Ozarks, Inc.*, 547 F. App'x 616, 620 (5th Cir. 2013) (per curiam) (citation omitted). To obtain declaratory relief, a plaintiff must present an on-going controversy that exists in the challenged conduct. *Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308, 312 (5th Cir. 1997).

Here, accepting Odem's allegations as true, he has alleged nothing more than a one-off violation of TDCJ policy by Sadler and has not plausibly shown that he may imminently suffer some similar harm in the future.

For these reasons, the undersigned RECOMMENDS that all claims requesting declaratory relief be DISMISSED with prejudice for frivolousness and failure to state a claim upon which relief may be granted. § 1915A(b).

   iii.  *Monetary claims against Sadler under RLUIPA, in her official capacity, and compensatory damages*

Odem requests "punitive damages" and "compensation for all los[t] property" for the alleged violations of his First Amendment and RLUIPA rights. Dkt. No. 13 at 6. However, Odem's claims for money damages against Sadler under RLUIPA, against her in her official capacity, and for compensatory damages in her individual capacity fail to state claims because he seeks relief in a manner barred by statute.

State employees enjoy sovereign immunity for Section 1983 and RLUIPA claims made against them in their official capacity for money damages. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 331, 336 (5th Cir. 2009), *aff'd sub nom. Sossamon v. Texas*, 563 U.S. 277 (2011)). Additionally, "RLUIPA does not create a cause of action against defendants in their individual capacities." *Id.* at 331. Accordingly, RLUIPA only creates private right of action for injunctive and declaratory relief. *Id.* at 327.

The Prison Litigation Reform Act (PLRA) prohibits "compensatory damages for mental or emotional injuries… absent physical injury." *Geiger*, 404 F.3d at 375. Odem does not allege that Sadler's actions resulted in a physical injury, thus compensatory damages are prohibited. *See Carter v. Hubert*, 452 F. App'x 477, 479 (5th Cir. 2011) (holding that the confiscation of a bible and other religious pamphlets without physical injury failed to amount to more than a de minimis injury). However, "prisoners may recover punitive or nominal damages for a Constitutional violation." *Hutchins v. McDaniels*, 512 F.3d 193, 198 (5th Cir. 2007).

For these reasons, the undersigned RECOMMENDS that Odem's claims for money damages against Sadler under RLUIPA, against her in her official capacity, and for compensatory damages in her individual capacity be DISMISSED with prejudice for frivolousness and failure to state a claim upon which relief may be granted. § 1915A(b).

C.  Conditions of Confinements Claims

Odem alleges that on April 22, 2020, he was placed in a cell with "hazardous conditions" with "no running water to drink" or water "to relieve himself" that resulted in an "unflushed toilet." Dkt. No. 13 at 12. Odem claims in his Questionnaire responses that

prison officials never provided him with water, but later states "I receive[d] water 3 …. 4 times" before the issue was reported "to the nighttime officials." Dkt. No. 37 at 24. Odem further provides that these conditions remained "all day all night" and that Unit staff "all saw, knew, and laugh[ed]" and "intentionally subjected [him] to deprivation of basic human needs." *Id.* Lastly, while Odem says that he was housed in the cell for two weeks (Dkt. No. 13 at 14), he states that he was not physical harmed by the conditions of this confinement, but suffered "humiliation, embarrassment, and inhuman injuries". Dkt. No. 37 at 24.

While prisons are not mandated to be comfortable, the Eighth Amendment does not "permit inhuman ones." *Famer v. Brennan*, 511 U.S. 825, 832 (1994). Prisons have a duty to meet inmates' basic needs by furnishing adequate food, water, shelter, clothing, medical care, and a safe environment. *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996). Such basic needs constitute the "humane conditions of confinement" required under the Eighth Amendment. *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001).

To prevail on a conditions of confinement claim, a plaintiff must plausibly state an objective and a subjective element. *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019). First, the plaintiff must establish objectively that the prison official deprived him of the minimal requirements for civilized measure of life's necessities, and thus exposed him to a substantial risk of injury. *Id*. "[R]estrictive and even harsh" conditions do not create a deprivation; rather, the deprivation must be serious. *Coleman v. Dallas Cnty. Jail*, No. 3:19-cv-3009-L-BN, 2020 WL 7029915, *4 (N.D. Tex. Oct. 22, 2020).

Second, the plaintiff must show that the prison official subjectively knew of the risk the condition created and showed deliberate indifference to that risk to the plaintiff. *Id.* at *4. Finally, a prisoner must also show that the condition injured them in some way. *Id.* Under the PLRA, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury. . . .". 42 U.S.C. § 1997e (The injury under a conditions of confinement claim must be "more than de minimis but need not be significant." *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (cleaned up).

The Eighth Amendment can be violated with cells that are filthy, or unsanitary. *Id.* at 720; *see also Gates v. Cook*, 376 F.3d 323, 338 (5th Cir. 2004) (finding an Eighth Amendment violation when inmates were held in a cell with "crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles"). The length of time an inmate is subjected to the conditions is also a consideration in determining whether there has been a violation of the Eighth Amendment. *See Hutto v Finney*, 437 U.S. 678, 686–87 (1978). "A filthy, overcrowded cell… might be tolerable for a few days and intolerably cruel for weeks or months." *Id.*; *see also McCord v. Maggio*, 927 F.2d 844, 848 (5th Cir. 1991) (finding a violation of the Eighth amendment where a prisoner lived in a cell for ten months without a bunk and where sewage backed into the cell when it rained, causing the inmates to sleep on mattress soaked with sewage).

While Odem has alleged sufficient facts that, when taken as true, could objectively constitute a failure to provide the minimal requirements of life's necessities, he has not alleged facts that the Defendants knew and showed deliberate indifference to a substantial

risk of injury. Odem merely states in conclusory fashion that the Unit staff "knew" and "intentionally" deprived him of his "basic human needs." Dkt. No. 37 at 24. Moreover, Odem states that he was not physical harmed by the conditions of this confinement but suffered only "humiliation, embarrassment, and inhuman injuries". *Id.* Odem's conclusions about the Defendants' subjective knowledge of the alleged conditions do not provide sufficient facts to state a claim.

For these reasons, the undersigned RECOMMENDS that all condition of confinement claims against the Defendants be DISMISSED with prejudice for frivolousness and failure to state a claim upon which relief may be granted. § 1915A(b).

D.  Grievance Claims

Odem alleges that he took action to obtain his package from the Bookstore through the grievance process. Dkt. No. 13 at 8. Samantha Sullivan, a Robertson Unit grievance investigator, denied Odem's grievance as time barred. *Id.* Odem alleges that his step-2 grievance was returned because the unit failed to screen it first. *Id.* Odem also states that Crystal Reyes, another Robertson Unit grievance investigator, along with Sullivan failed to intervene or provide him a reasonable response. *Id.* Odem then alleges, in conclusory fashion, that Sullivan and Reyes throw away or misplace grievances to "protect their fellow unit personnel." *Id.*

Prisoners do "not have a federally protected liberty interest in having [their] grievances resolved to [their] satisfaction," and an alleged § 1983 due process violation for failure to investigate grievances is "indisputably meritless." *Hill v. Walker*, 718 F. App'x. 243, 250 (5th Cir. 2018) (citing *Geiger*, 404 F.3d at 373–74). The Fifth Circuit further

stated that "an alleged violation of [a prisoner's] due process rights resulting from prison grievance procedures is a 'legally nonexistent interest.'" *Geiger*, 404 F.3d at 374.

Odem merely concludes that the Defendants violated his rights because they were unable to assist him with locating his package. But even if Odem could provide facts of the Defendant's personal involvement, his claim would still fail because he has no federally protected right to have the grievance system resolve his disputes to his satisfaction. *See Geiger*, 404 F.3d at 374.

For these reasons, the undersigned RECOMMENDS that all grievance-related claims against the Defendants be DISMISSED with prejudice for frivolousness and failure to state a claim upon which relief may be granted. § 1915A(b).

E.  Retaliation Claims

The undersigned only analyzes Odem's allegation that Major Karla Sadler confiscated his prayer beads in retaliation for his use of the grievance system and courts, as well as his First Amendment rights to free speech, because they are the only allegations with factual support.[4] Dkt. No. 13 at 4, 8–9; Dkt. No. 37 at 5.

When given an opportunity to further develop his claims in his Questionnaire, Odem alleged that Sadler seized the beads since he "r[a]n [his] big mouth" to the Warden Thompson at his "initial introduct[ion]". Dkt. No. 37 at 4. Again, accepting Odem's factual

---

[4] Odem's other retaliation claims against Sadler and the other Defendants fail to state a claim because the allegations are based on his conclusion that the Defendants acted in a retaliatory manner. Thus, the undersigned does not analyze Odem's following retaliation claims: (1) Sadler's False I-20 report; (2) January 24, 2020, major disciplinary hearing; (3) March 10, 2020 strip search; (4) March 12, 2020, major disciplinary hearing; (5) events related to the April 22, 2020, failures to obey charges; (6) April 28, 2020, major disciplinary hearing; (7) August 30, 2020, riot investigation, charges, and conviction.

allegations as true, Sadler confiscated the beads after becoming angry that Odem complained to the wardens about Sadler not helping him locate his lost package. *See id.* Thus, Sadler's actions were made for his confrontation of the Wardens, not his use of the grievance process or courts. *See id.* Odem's free speech retaliation claim also fails because he does not have a constitutional right to complain to the wardens about his lost package outside the grievance process, which he used. *See Freeman*, 369 F.3d at 864 (5th Cir. 2004).

"To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006) (quoting *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)). Retaliation is actionable only "if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Id.* at 686.

The Fifth Circuit has recognized that "[t]he prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995)). "Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Id.* Thus, prisoners' claims of retaliation should be "carefully scrutinized by the courts." *Adeleke v. Fleckenstein*, 385 F. App'x 386, 387 (5th Cir. 2010) (citing *Woods*, 60 F.3d at 1166).

Conclusory allegations, including a prisoner's personal belief that he is the victim of retaliation, are insufficient to support a claim for retaliation. *Jones v. Greninger*, 188

F.3d 322, 325 (5th Cir. 1999) (citing *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997)). Instead, "[t]he inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." *Haddix v. Kress*, 203 F. App'x 551, 554 (5th Cir. 2006) (quoting *Woods*, 60 F.3d at 1166).

"Filing grievances and otherwise complaining about the conduct of correctional officers through proper channels are constitutionally protected activities, and prison officials may not retaliate against inmates for engaging in such protected activities." *Reese v. Skinner*, 322 F. App'x. 381, 383 (5th Cir. 2009) (citing *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006)). However, prisoners do not have a right to directly and verbally confront Unit staff with their grievances. *Freeman v. Texas Dep't of Crim. Just.*, 369 F.3d 854, 864 (5th Cir. 2004) ("Prison officials may legitimately punish inmates who verbally confront institutional authority without running afoul of the First Amendment.").

For these reasons, the undersigned RECOMMENDS that Odem's retaliation claims against Sadler be DISMISSED with prejudice for frivolousness and failure to state a claim upon which relief may be granted. § 1915A(b).

F.  Due process claims for disciplinary convictions

On August 31, 2020, Odem learned that he was charged with a level 1 offense 8.0 riot. Dkt. No. 37 at 15. Odem then requested the camera footage where the incident took place and Burnett informed him that "footage of[] the incident was attached as the charging officers main supporting evidence." Dkt. No. 20-1 at 6. On September 3, 2020, Odem's "Major Disciplinary Proceeding" began, and Burnett was replaced as Counsel Substitute

by Nina Lopez, who was uninformed of his defense.[5] *Id.* Odem states that Nina Lopez failed to follow "his defense" or get the "video thrown out as evidence" *Id.* Furthermore, Odem claims that Nina Lopez failed to advocate for him and informed him that he "was on [his] own." *Id.* at 7.

Odem claims that the disciplinary hearing officer, Captain Wyatt, decided to dismiss the riot charges brought against him, but on September 8, 2020, another disciplinary proceeding was instigated against him with Captain Thornton presiding. *Id.* at 7, 9. Odem alleges that the escorting sergeants "placed the plaintiff in front of Cpt Thornton with aggressive shoves" and Thornton "denied all evidence to [his] defense." *Id.* at 8. Odem also alleges that Thornton stated: "I'm going to find you guilty any way no matter what" and further "threatened to cause physician harm" to prevent him from cross examining a witness. *Id.* at 9

To the extent that Odem alleges that this disciplinary hearing violated his right to parole, good time credits, and class status, such claims are *Heck* barred. "In *Heck*, the Supreme Court held that if a plaintiff's civil rights claim for damages challenges the validity of his criminal conviction, and the plaintiff cannot show such conviction or sentence has been reversed, invalidated, or otherwise set aside, the claim is not cognizable under § 1983." *Magee v. Reed*, 912 F.3d 820, 822 (5th Cir. 2019) (per curiam) (citing *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1993). "A § 1983 claim which falls under the rule in

---

[5] Although Odem asserts that he wanted to keep Burnett as Counsel Substitute, and she was replaced without his consent, he still seeks $250,000 from her jointly and severally for "knowing and intentional participation in a conspiracy to deprive him of liberty and resulted in wrongful confinement and cruel and unusual punishment." Dkt. No. 20-1 at 16.

*Heck* is legally frivolous unless the conviction or sentence at issue has been reversed, expunged, invalidated, or otherwise called into question." *Hamilton v. Lyons*, 74 F.3d 99, 102 (5th Cir. 1996) (citation omitted).

The Fifth Circuit has applied *Heck* to claims for damages arising from alleged constitutional violations in "a prison disciplinary proceeding that results in a change to the prisoner's sentence, including the loss of good-time credits." *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998) (en banc) (citing *Edwards v. Balisok*, 520 U.S. 641, 645 (1997)). Odem has not—and cannot—show that the Unit's decision has been reversed on direct appeal, expunged by executive order, or invalidated by a state or federal court. *See McGrew v. Texas Bd. of Pardons & Paroles*, 47 F.3d 158, 161 (5th Cir. 1995

Because Odem is unable to show that the Unit's decision, as well as the underlying disciplinary decision on which the Board's decision is based, has been reversed on direct appeal, expunged by executive order, or otherwise declared invalid by a state tribunal or federal court, his claims are *Heck* barred.

For these reasons, the undersigned RECOMMENDS that all of Odem's Due Process claims against the Defendants be DISMISSED with prejudice for frivolousness and failure to state a claim upon which relief may be granted. § 1915A(b).

G. Conspiracy claims

Throughout Odem's complaint, he alleges that Sadler "conspired with her unit subordinates to solidify the deprivation of [his] liberty and wellbeing for the use of the offenders grievance process". Dkt. No. 13 at 10. Odem claims that his disciplinary

infractions were the result of "conspiratorially planned d[i]sciplinary acts" made "in support and affirmation" of Sadler. *Id.* at 15, 17.

In order to establish a conspiracy claim under Section 1983, a plaintiff must show (1) "an actual violation of Section 1983", and (2) "an agreement by the defendants to commit an illegal act." *Leggett v. Williams*, 277 F. App'x 498, 501 (5th Cir. 2008). "Mere conclusory allegations of conspiracy cannot, absent reference to material facts, state a substantial claim of federal conspiracy". *Id.* (citing *Hale v. Harney*, 786 F.2d 688, 690 (5th Cir. 1986)). In pleading these specific facts, a plaintiff must allege the operative facts of the alleged conspiracy. *Lynch v. Cannatella*, 810 F.2d 1363, 1369–70 (5th Cir. 1987).

In addition, to recover on a claim of conspiracy, the Fifth Circuit has held that there must be an actual deprivation of a constitutional right; a mere conspiracy to deprive is insufficient. *Villanueva v. McInnis*, 723 F.2d 414, 418 (5th Cir. 1984). Without an underlying actionable Section 1983 claim, no actionable conspiracy claim exists. *Kerr v. Lyford*, 171 F.3d 330, 341–42 (5th Cir. 1999), *abrogated on other grounds by Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003).

Odem's conspiracy claims fail to state a claim because he has failed to show an agreement of any of the Defendants to commit an illegal act. In fact, Odem has only plausibly stated a viable §1983 claim against Sadler for an incident that only she was involved in. *See supra* Part.III.B.2.i (explaining why Odem's First Amendment claim against Sadler survives preliminary screening). Accordingly, Odem's conspiracy allegations lack an arguable basis in fact or law.

For these reasons, the undersigned RECOMMENDS that all conspiracy claims against the Defendants be DISMISSED with prejudice for frivolousness and failure to state a claim upon which relief may be granted. § 1915A(b).

H.  Odem's other deficient claims

To the extent that Odem alleges that this transaction of occurrences violated other constitutional provisions, he fails to state a valid claim. Although Odem alleged some facts concerning some of his claims against some defendants, his remaining allegations are nothing more than conclusions masquerading as factual allegations.

Labels and conclusions are insufficient to support a cognizable claim when, as here, a plaintiff is under direction by the Court to provide specific facts that support a claim. *See Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993); *Van Cleave v. United States*, 854 F.2d 82, 84 (5th Cir. 1988). Courts are not bound by a plaintiff's factual allegations that clearly lack a basis in fact. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994). Although the Court "must construe the pleadings of pro se litigants liberally," Odem's past pleadings in this action indicate that Odem would be unable to remedy his deficiencies through another amended complaint or questionnaire. *See Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

For these reasons, the undersigned RECOMMENDS that all claims remaining claims against any of the Defendants be DISMISSED with prejudice for frivolousness and failure to state a claim upon which relief may be granted. § 1915A(b).

## IV.  CONCLUSION

For the reasons explained in these Findings, Conclusions, and Recommendations, the undersigned RECOMMENDS that Sadler be required to file an answer, motion, or other responsive pleading to Odem's Complaint regarding the surviving First Amendment claim. The undersigned further RECOMMENDS that all of Odem's claims against the remaining Defendants be DISMISSED with prejudice under 28 U.S.C. § 1915A for failure to state a claim and frivolousness.

## V.  RIGHT TO OBJECT

A copy of these Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these Findings, Conclusions, and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## VI.    ORDER OF TRANSFER

As of the date of this order, all parties have not consented to the jurisdiction by the magistrate judge. Accordingly, it is the opinion of the undersigned that this matter must be transferred to the district judge for further proceedings. It is therefore ORDERED that the transfer of this case to the United States Magistrate Judge is terminated and the case is hereby transferred back to the docket of the United States District Judge. This case shall hereinafter be designated as Civil Action No. 1:20-CV-00041-H.

ORDERED this 17th day of October, 2022.

_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE

28